This matter presents a timely appeal from a judgment rendered by the Columbiana County Common Pleas Court, finding defendant-appellant, Donald F. Newman, guilty of rape, in violation of R.C. 2907.02 (A) (1), and sentencing him to an indefinite incarceration term of not less than ten, nor more than twenty-five years, and classifying him as a sexual predator, thereby requiring him to register in accordance with R.C.2950.01 et. seq.
On December 19, 1995, eleven-year-old Sheri Lynn Saling (the victim) visited her friend Mary Hartshorne (Hartshorne), and her two children. (Tr. 58-59). While the victim was at Hartshorne's home, Hartshorne's sister-in-law, LaRaina Hartshorne (LaRaina), arrived with friends and alcoholic beverages. (Tr. 105). The victim's boyfriend, Jason Dunlap (Dunlap), also arrived at some point during the evening. (Tr. 272). Appellant and his friend Mark Cox (Cox) visited Hartshorne's residence as Cox knew Hartshorne's husband was away at work, and he wanted to engage in sexual relations with her. (Tr. 284-285)
As more people arrived, the atmosphere changed in the Hartshorne residence from an intimate visit to an informal party. The group played games and consumed alcohol. (Tr. 104-105) Although the victim was under the legal age to consume alcohol, LaRaina allegedly permitted her to drink with the group. (Tr. 106). As the party quieted, some people left the house while others, including the victim and appellant, spent the night.
The victim slept close to appellant and in the same room. (Tr. 293). The victim was awakened during the night when appellant crawled on top of her and demanded sex. (Tr. 108) When she refused, appellant woke LaRaina and told her his desires. (Tr. 109). LaRaina purportedly told the victim to engage in sexual intercourse with appellant, which resulted in the victim striking LaRaina. (Tr. 109-112). Appellant then threw the victim to the ground and removed both his and her clothes. (Tr. 110) Appellant then engaged in sexual intercourse with the victim. (Tr. 111). After the incident was over, the victim and appellant went to sleep. (Tr. 112)
The next morning appellant began to work on Hartshorne's car and those who remained accused him of having sexual relations with the victim. (Tr. 197-198). Appellant agreed with these accusations, although he later claimed that he had only been joking. (Tr. 197-198). The victim went home, but did not tell her mother, Cheryl Saling (Saling), what had occurred. (Tr. 59) Saling did not learn about the incident until months later. (Tr. 59). After Saling contacted the Columbiana County Department of Human Services, the victim was taken to Tod Children's Hospital, where she was examined by Dr. Madeleine Anna Ortiz. (Tr. 152) Dr. Ortiz discovered that the victim's hymenal ring was missing and made a diagnosis of sexual abuse. (Tr. 157)
Appellant was arrested and charged with rape. Appellant thereafter agreed to plead guilty to the lesser offense of gross sexual imposition. However, at the sentencing hearing for gross sexual imposition, appellant was permitted to withdraw his guilty plea and the trial court immediately set the case for jury trial.
During the trial, plaintiff-appellee, State of Ohio, played a tape of appellant's statement made to police officers, Debbie Fisher (Fisher) and Michael Whittemore (Whittemore), during preliminary investigations of this incident, wherein appellant admitted to engaging in sexual intercourse with the victim. Appellee edited the tape to prevent any reference to the fact that the statement was taken from appellant while he was presently incarcerated. (Tr. 148). The trial court disallowed the tape and the transcript from being entered into evidence, as there was one phrase on the tape indicating that appellant was in jail at the time said statement was offered. (Tr. 267-269). The trial court reinforced its ruling on the tape by denying the jury the opportunity to listen to the tape during deliberations. (Tr. 354). The jury found appellant guilty of rape.
The trial court thereafter sentenced appellant to an indefinite incarceration term of not less than ten years, nor more than twenty-five years. The trial court also held a sexual predator hearing during sentencing. The trial court considered extensive evidence and provided appellant an opportunity to speak on his own behalf, which appellant declined. (Tr. 371). The trial court classified appellant as a "sexual predator," and required him to register under R.C. 2950.01 et. seq. This appeal followed.
 Appellant sets forth six assignments of error on appeal. Appellant's first assignment of error alleges:
 "The trial court erred as a matter of law by allowing the tape recorded statement of the appellant to be played for the jury."
Appellant recognizes that his counsel did not object to the playing of the tape to the jury. However, appellant argues that the failure to object does not defeat his claim because it was plain error for the trial court to permit the playing of the tape. Appellant argues that despite an attempt to remove all references to the locus of the statement, the Carroll County Jail, there was one statement which remained when appellant stated:
 "Fisher: This is part of the investigation. This is just a part of it.
 "Newman: I mean, I'm about to get out and I'm — I'm doing well. I have a good job. I just got a raise and then all of a sudden — I saw Sheri in high school at the — the Science Fair. * * *." (Tr. 223-224)
Appellant argues that his statement that he was about to get out indicated to the jury that he was in jail. Appellant also argues that one of the officers who took this statement, Fisher, also conveyed the locus of the statement when she stated:
 "Q. All right. Did you speak with anyone else in investigating this case?
 "A. Yes, on March 25, 1996, I went to Carroll County Jail with Sean Whittemore from the Prosecutor's Office. At that time —" (Tr. 81)
Appellant further argues that the trial court recognized that error was committed regarding the tape because it did not allow the tape into evidence. Appellant contends this demonstrated the trial court's recognition that there was a high risk of prejudice from the tape and the transcripts.
Evid.R. 104 vests discretion with the trial court to determine the admission or non-admission of evidence at trial. A reviewing court will not reverse a trial court's decision to admit evidence unless there is an abuse of discretion. State v. Davis (1988),49 Ohio App.3d 109.
Evid.R. 403 states:
 "EXCLUSION OF RELEVANT EVIDENCE ON GROUNDS OF PREJUDICE, CONFUSION, OR UNDUE DELAY
 "(A) Exclusion Mandatory. Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury.
 "(B) Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence."
Appellant argues that here, the probative value of the tape was substantially outweighed by the danger of unfair prejudice resulting from the jury discovering that appellant was in jail during the statement. Appellant notes that the trial court did not give a curative instruction for the jury to disregard the tape after it denied admission of the tape into evidence. Appellant maintains that the jury obviously placed great weight upon the tape since it requested to hear the tape again during deliberations. Appellant argues that mandatory exclusion under Evid.R. 403 should apply, and therefore it was plain error for the trial court to allow the playing of the tape.
In State v. Williams (1977), 51 Ohio St.2d 112, 117, the Ohio Supreme Court stated:
 "* * * This court has consistently held that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court. * * * `Any other rule,' this court stated in State v. Driscoll (1922), 106 Ohio St. 33, * * would relieve counsel from any duty or responsibility upon the trial court to give faultless instructions upon every possible feature of the case, thereby disregarding entirely the true relation of court and counsel which enjoins upon counsel the duty to exercise diligence and to aid the court rather than by silence mislead the court into commission of error.'" (Additional citations omitted)
Since there was no objection to the playing of the tape by appellant's counsel to the trial court, this court may reverse the trial court's decision only if plain error is demonstrated. Crim.R. 52 (B) states:
 "Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."
The Ohio Supreme Court in State v. Landrum (1990), 53 Ohio St.3d 107, stated that plain error is taken with the utmost caution, and only applied in exceptional circumstances. Furthermore, to prevail under a claim of plain error, appellant must demonstrate that the outcome of the trial would clearly have been different but for the trial court's error. State v. Waddell
(1996), 75 Ohio St.3d 163.
In the case at bar, the outcome would not clearly have been different if the trial court had prohibited the playing of the tape, or had given a curative instruction to the jury to disregard the statement on the tape. First, the alleged errors from the tape were minor errors. Although Fisher stated she conducted an interview in the jail, she never mentioned that appellant was the person so interviewed. Appellant's phrase on the tape that he was about to get out and that he was doing well does not explicitly state that he was in jail. Both of these alleged errors require the jury to make inferences to determine that appellant was in jail when he gave the statement.
Second, appellee presented numerous witnesses indicating that appellant had sex with the victim. The victim stated that appellant forced her to have sex with him. (Tr. 111-112) Appellant's friend, Cox, also testified that appellant "slept" with the victim. (Tr. 262). Hartshorne testified that she saw appellant and the victim lying naked next to each other and also that she saw them having sex. (Tr. 249). Dr. Ortiz gave an expert opinion that the victim was sexually abused. (Tr. 157) Finally, appellant's own witness, LaRaina, stated that appellant admitted to having sex with the victim. (Tr. 173). The testimony offered by all of these witnesses demonstrated that appellant was guilty and the outcome of the trial court would clearly not have been different if the tape was not played. Waddell, supra.
Based upon the fact that the alleged defects were minor, and the fact that appellee presented many witnesses who implicated appellant, it cannot be said that the outcome of the trial would clearly have been different had the tape not been played or a curative instruction given. The trial court did not abuse its discretion by allowing appellant's tape recorded statement to be played for the jury.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "The trial court erred in failing to rule upon the motion to suppress filed on behalf of appellant prior to trial."
Appellant states that a motion to suppress was filed before trial which sought to exclude appellant's tape recorded statement. Appellant argues that this motion raised constitutional issues of whether the statement was made knowingly and voluntarily. Appellant argues that the trial court did not conduct a hearing to consider the motion to suppress, in violation of Crim.R. 12 (E). Appellant also argues that the trial court did not put forth a formal basis for its ruling and therefore, committed reversible error. State v. Almalik (1986),31 Ohio App.3d 33.
Crim.R. 12 (E) states, in pertinent part:
 "Ruling of Motion. The court may adjudicate a motion based upon briefs, affidavits, the proffer of testimony and exhibits, a hearing, or other appropriate means."
Crim.R. 12 (E) provides various means by which a trial court may hear and rule upon motions, and a hearing is not mandated. A hearing is only required when there are factual allegations utilized to support a claim. Solon v. Malhon (1983), 10 Ohio App.3d 130. There were no such factual allegations made by appellant in his motion. Rather, appellant raised the constitutional issue of whether he was entitled to counsel before making the taped statement. Furthermore, in U.S. v. Gouveia
(1984), 467 U.S. 180, the United States Supreme Court stated:
 "* * * our cases have long recognized that the right to counsel attaches only at or after the initiation of adversary judicial proceedings against the defendant."
Appellant's statement was not part of any formal proceeding, but was conducted pursuant to a complaint from the department of human services and was part of standard investigatory techniques. (Tr. 178). Additionally, appellant never claimed he was not read his Miranda rights, nor did he claim that he requested an attorney and was denied same. Instead, appellant argued that he had a right to counsel before making his statement. Therefore, appellant did not present a factual question at the time he filed his motion to suppress. Moreover, appellant was not entitled to counsel when he made the taped statement.
Additionally, the trial court did not err when it declined to put forth a formal basis for its ruling. In State v. Brown
(1992), 64 Ohio St.3d 476, the Ohio Supreme Court held that the trial court does not have a duty to issue findings of fact if the defendant does not so request. The Ohio Supreme Court held similarly in Almalik, supra, to which appellant cites. In the present case, appellant did not formally request that the trial court present a statement of its findings of fact in deciding his motion. Furthermore, this case is similar to State v. Morris
(Nov. 29, 1989), Montgomery App. No. 10992, unreported, wherein the trial court did not make a formal ruling on a motion to suppress, but later admitted the evidence which was sought to be suppressed. The appellate court there held that it was evident from the trial court's admission of the evidence that it had overruled the motion. The same situation was present in this case as it was evident that the trial court overruled appellant's motion to suppress the taped statement when it allowed same to be played for the jury. Therefore, the trial court did not commit error with regards to appellant's motion to suppress.
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "The trial court erred as a matter of law by its failure to instruct the jury on the lesser included offense of gross sexual imposition.
Appellant states that he was charged with and convicted of a sole count of rape. Appellant argues that the trial court did not instruct the jury upon the lesser included offense of gross sexual imposition and this resulted in reversible error.
Appellant notes that his counsel failed to object before the trial court, but argues that it was plain error for the trial court not to instruct the jury on this lesser included offense. Appellant argues that under Crim.R. 52 (B), plain error may be noticed even though it was not brought to the attention of the trial court.
Appellant cites State v. Deem (1988), 40 Ohio St.3d 205, wherein the Ohio Supreme Court held:
 "* * * a jury may consider three groups of lesser offenses on which, when supported by the evidence at trial, it must be charged and on which it may reach a verdict: (1) attempts to commit the crime charged, if such an attempt is an offense at law; (2) inferior degrees of the indicted offense; or (3) lesser included offenses.
"* * *
 "An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the commission of the lesser offense."
Appellant maintains that gross sexual imposition has been held to be a lesser included offense of rape. State v. Johnson (1988),36 Ohio St.3d 224. Appellant states that it was apparent that he wanted the jury to consider the lesser charge of gross sexual imposition when the following colloquy took place:
 "THE COURT: * * * I did speak briefly with counsel yesterday on anticipated jury instructions. Mr. Horvath, is it — is it still Defendant's request to give an instruction on a lesser included offense, I believe, of gross sexual imposition?
 "MR. HORVATH: If I can have just a moment, Your Honor. (Attorney Horvath confers with his client off the record.)
 "MR. HORVATH: Yes, yes, Your Honor. That — that is something I would prefer. I guess not having had the opportunity to review that particular charge —
 "THE COURT: The difference in the sections that — in that case it's saying that the charge of Gross Sexual Imposition if you find that the Defendant had sexual contact with another, not the spouse of the defendant and that other person was less than 13 years of age, whether or not the defendant knew the age of the person.
 "Sexual contact means any touching of an erogenous zone of another, including without limitation, the thigh, genitals, buttock, pubic region or, if such person is a female, a breast, for the purpose of sexually arousing or gratifying either person.
 "And that's the difference. So, primarily, sexual contact versus sexual conduct. (Pause)
 "Well, in any event, I'll prepare it and then you are going to have to tell me by the time I give instructions to the Jury. You can't object to something after the fact — oh, you can. After the fact, I can still give it. It would be helpful to the Court to know ahead of time whether you want that or not. If not (Tr. 322-323)
Appellant maintains that the trial court committed plain error in failing to give the lesser included offense of gross sexual imposition after it was indicated that he wanted such instruction to be given.
In State v. Underwood (1983), 3 Ohio St.3d 12, the Ohio Supreme Court held:
 "The failure to object to a jury instruction constitutes a waiver of any claim of error relative thereto, unless, but for the error, the outcome of the trial clearly would have been otherwise. (State v. Long, 53 Ohio St.2d 91
[7 O.O.3d 178], approved and followed.)"
In the present case, the trial court acknowledged the fact that appellant was considering adding an instruction on the lesser included offense. However, the trial court expressly told appellant's counsel that he would have to tell the trial court whether or not he wanted the lesser included offense by the time the court instructed the jury. After the trial court gave the instructions to the jury, it asked whether appellant's counsel had anything to add, and appellant's counsel responded that he did not. (Tr. 354). Appellant thereby waived this jury instruction by failing to request the lesser included offense. Furthermore, appellee presented numerous witnesses which demonstrated appellant was guilty of rape, as recited under assignment of error one. Therefore, the outcome would not clearly have been different had the trial court instructed the jury on the lesser included offense.
Based upon the fact that appellant's counsel did not request that the jury be instructed on the lesser included offense, and on the fact that there was substantial evidence presented demonstrating appellant was guilty of rape, the outcome of the trial would not clearly have been different had the trial court instructed the jury on the lesser included offense.
Appellant's third assignment of error is found to be without merit.
Appellant's fourth assignment of error alleges:
 "The trial court erred as a matter of law by designating the appellant a "sexual predator" pursuant to O.R.C. Chapter 2950 without conducting the hearing required by C.R.C. 2950.09 (B) (1)."
Appellant states that the trial court immediately moved into the sentencing phase of this case after he was found guilty of rape. Appellant argues that the trial court erred when it immediately determined him to be a "sexual predator" after the sentencing phase. Appellant contends that R.C. 2950.09 (B) (1) requires a separate hearing to determine such classification and does not permit that a sexual predator hearing be conducted as part of the original trial. Appellant argues that the trial court conducted the hearing in question during the original trial and thereby, committed error.
Appellant's counsel did not object to the trial court conducting the sexual predator hearing, therefore under Crim.R. 52 (B), there cannot be a reversal absent plain error. Furthermore, plain error can only be found if, without the error, the outcome of the trial would clearly have been different.Waddell, supra.
R.C. 2950.09 (B) (1) states:
 "Regardless of when the sexually oriented offense was committed, if a person is to be sentenced on or after the effective date of this section for a sexually oriented offense that is not a sexually violent offense, or if a person is to be sentenced on or after the effective date of this section for a sexually oriented offense that is a sexually violent offense, the judge who is to impose sentence upon the offender shall conduct a hearing to determine whether the offender is a sexual predator. The judge shall conduct the hearing prior to sentencing and, if the sexually oriented offense is a felony, may conduct it as part of the sentencing hearing required by section 2929.19 of the Revised Code. The court shall give the offender and the prosecutor who prosecuted the offender for the sexually oriented offense notice of the date, time, and location of the hearing. At the hearing, the offender and the prosecutor shall have an opportunity to testify, present evidence, call and examine witnesses and expert witnesses, and cross-examine witnesses and expert witnesses regarding the determination as to whether the offender is a sexual predator. The offender shall have the right to be represented by counsel and, if indigent, the right to have counsel appointed to represent the offender." (Emphasis added)
R.C. 2950.09 (B) (1) expressly gave the trial court the authority to conduct the sexual predator hearing during sentencing. Furthermore, appellant was convicted of rape, which is a felony, and the trial court informed appellant it would proceed with the sexual predator hearing during sentencing. (Tr. 367). Appellant's counsel also argued that this crime was a crime of opportunity and was not predatory in nature. (Tr. 369). This demonstrated that appellant's counsel knew the hearing would take place during sentencing, as he was beginning to argue against the classification. Finally, the trial court provided appellant an opportunity to testify on his own behalf, but he refused. (Tr. 371). Therefore, the trial court complied with R.C. 2950.09 (B) (1) and did not commit any mistake upon which to base a claim of plain error.
Appellant's fourth assignment of error is found to be without merit.
Appellant's fifth assignment of error alleges:
 "The verdict of guilty returned by the jury must be remanded, or alternatively, reversed as appellant lacked effective assistance of counsel at trial."
In Strickland v. Washington (1984), 466 U.S. 668, the United States Supreme Court put forth a test to determine whether a defendant was denied effective assistance of counsel, stating:
 "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable."
Appellant concedes that there is a strong presumption of adequate assistance of counsel. Strickland, supra. In State v.Bradley (1989), 42 Ohio St.3d 136, the Ohio Supreme Court adopted the test set forth in Strickland, stating:
 "* * * `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 (1981).' Strickland, supra,
at 691. To warrant reversal, `[tihe defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.' Strickland, supra, at 694." (Emphasis added)
Appellant argues that his defense counsel committed four serious errors, thereby causing ineffective assistance. First, appellant argues that defense counsel failed to move for a mistrial when his taped statement was played for the jury, but denied admission into evidence. Appellant argues that in denying the tape's admission into evidence, the trial court recognized the potential unfair prejudice, and defense counsel should have moved for a mistrial, since the jury had previously heard the taped statement. Appellant recognizes that granting a mistrial is within the sound discretion of the trial court. State v. Reynolds
(1988), 49 Ohio App.3d 27. However, appellant maintains that there is no way to determine whether the trial court would have granted a motion for mistrial, since defense counsel did not so move.
A mistrial is only granted when a substantial right of the accused or the prosecution is adversely affected. Reynolds,supra. In the present case, therewas overwhelming testimonial evidence presented implicating appellant with raping the victim, including that which was offered by Cox, Hartshorne, Dr. Ortiz, LaRaina and the victim, as recited under assignment of error one. Since granting a mistrial is within the sound discretion of the trial court and there was substantial evidence presented supporting appellant's conviction, there was not a reasonable probability, sufficient to undermine confidence in the outcome, that the outcome would have been different had defense counsel moved for a mistrial. Bradley, supra.
Second, appellant argues that defense counsel did not request that the trial court give a jury instruction to disregard the taped statement it had previously played, since the trial court denied the tape's admission into evidence. Appellant argues that such an instruction might have caused the jury to ignore the taped statement and this could have changed the outcome. Appellant concludes that by failing to request such instruction, defense counsel was deficient and this prejudiced appellant because the jury was able to hear the taped statement where appellant admitted to engaging in sexual intercourse with the victim.
Defense counsel was deficient because he failed to request a curative instruction. Thus, appellant has met the first prong of the Strickland test. However, to constitute a reversal, appellant must additionally show a reasonable probability that he was prejudiced by defense counsel's deficiency. Appellant has failed to satisfy this second prong of Strickland.
Appellant argues that the absence of a curative instruction might have caused the jury to consider his taped statement, and base his conviction upon such statement. However, this overlooks the fact that there were numerous witnesses presented which implicated appellant, as recited in assignment of error one. Therefore, there was not a reasonable probability, sufficient to undermine confidence in the outcome, that the trial outcome would have been different had defense counsel requested a curative instruction. Bradley, supra.
Third, appellant argues that defense counsel was deficient when he questioned appellant about the inadmissible taped statement. Appellant argues that this allowed appellee an opportunity to cross-examine him about the taped statement and voided the effect of the trial court's ruling, which denied said statement admission into evidence. Appellant argues that this deficiency caused him to be prejudiced because the jury could have considered the taped statement.
Defense counsel was deficient when he questioned appellant about the taped statement. Thus, appellant has satisfied the first prong of the Strickland test. However, appellant must satisfy the second prong of Strickland to demonstrate ineffective assistance of counsel. Appellant argues that he was prejudiced by defense counsel's questioning because the jury could have considered the testimony concerning the inadmissible taped statement. However, this overlooks the fact that appellant was only one of several witnesses, and that appellee presented numerous witnesses which demonstrated appellant was guilty of rape, as recited in assignment of error one. Therefore, there was not a reasonable probability, sufficient to undermine confidence in the outcome, that the trial outcome would have been different had defense counsel not questioned appellant about the taped statement. Bradley, supra.
Fourth, appellant argues that counsel was deficient when he failed to request that the trial court instruct the jury on the lesser included offense of gross sexual imposition. Appellant maintains that by failing to request this instruction, defense counsel forced him to face a single count of rape, and prevented him from possibly being convicted of the lesser charge of gross sexual imposition. Therefore, appellant argues, he was prejudiced by this deficiency.
Defense counsel could have strategically decided not to request the lesser included offense in order to obtain a full acquittal rather than run the risk of conviction on the lesser offense. This strategy appears to follow appellant's earlier decision to withdraw his guilty plea of gross sexual imposition and proceed with trial. This court cannot use the benefit of hindsight to determine that this decision was erroneous, causing defense counsel to be deficient. Strickland, supra. Furthermore, there were numerous witnesses presented which established appellant's guilt, as recited in assignment of error one. Therefore, appellant did not demonstrate that defense counsel was deficient in his decision not to request a lesser included charge and thereby, did not satisfy the first prong of Strickland.
Based upon the fact that all four alleged errors did not set forth a reasonable probability, sufficient to undermine confidence in the outcome such that the outcome of the trial would have been different if the alleged errors did not occur, appellant has not met the requirements necessary to establish a claim of ineffective assistance of counsel. Strickland, supra; Bradley,supra.
Appellant's fifth assignment of error is found to be without merit.
Appellant's sixth assignment of error alleges:
 "The verdict of the jury finding appellant `guilty' of rape in violation of O.R.C. § 2907.02 (A) (1) (b) was against the manifest weight of the evidence."
Appellant offers many arguments attacking appellee's witnesses. Appellant notes that appellee presented seven witnesses, but states that none of the testimony was either probative or reliable. Appellant argues that Saling's testimony had no probative value. Next, appellant argues that Fisher's testimony was not probative and was prejudicial because her testimony inferred that she interviewed appellant while he was in jail. Appellant also argues that Dr. Ortiz's testimony was not probative because it could do nothing more than state that the victim's hymenal ring was missing. Appellant maintains that Whittemore's testimony only authenticated the taped statement which the trial court later declined to admit into evidence, so such testimony was not probative. Appellant further argues that Cox's testimony was not relevant, and that Hartshorne's testimony was not probative and was discredited because she originally testified that she witnessed appellant having sex with the victim, but later testified that appellant only pretended to have sex with the victim. (Tr. 249). Appellant finally argues that the victim's testimony was discredited because she claimed she confronted LaRaina, which conflicts with LaRaina's testimony and her statement to Dr. Ortiz that it was Hartshorne who pressured her to have sex with appellant. Appellant also argues that the victim told Dr. Ortiz that LaRaina threw her to the ground, but then testified that it was appellant who threw her to the ground. Appellant concludes that all of this testimony demonstrates that the verdict was against the manifest weight of the evidence.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the Ohio Supreme Court discussed the issue of manifest weight of the evidence, stating:
 "* * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue
which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief'
(Emphasis added.) Black's supra, at 1594.
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony. * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')."
Furthermore, it is the obligation of the trier-of-fact to evaluate the credibility of the witnesses. State v. DeHass
(1967), 10 Ohio St.2d 230. It is within the purview of the jury to believe one witness more than another and this court will not substitute its judgment for that of the trier-of-fact.
The victim's testimony was consistent with her statement to Dr. Ortiz as to the major elements of the crime. The victim testified that appellant took off both his and her clothes and then stuck his penis into her vagina. (Tr. 110-112). Appellant's own witness, LaRaina, stated that appellant admitted to having sex with the victim. (Tr. 173). Additionally, appellee offered the uncontradicted testimony of appellant's friend Cox, who testified that appellant and the victim "slept" together. (Tr. 262). Appellee also presented the testimony of Hartshorne, who testified that she saw appellant lying on the floor, next to the victim, and both of them had their clothes off. (Tr. 249). Appellee presented Dr. Ortiz's testimony whereby she gave her expert opinion, based upon her examination of the victim, that the victim had been sexually abused. (Tr. 157). Furthermore, appellant's own testimony was conflicting and injured his case. Appellant testified that he could not be sexually aroused when drunk and then admitted that he was sexually aroused the night the incident occurred. (Tr. 314-315). Appellant further provided conflicting testimony regarding how far he was from the victim while they slept, ranging from five to twenty feet. (Tr. 307, 317). This testimony damaged appellant's credibility.
Based upon the fact that the trier-of-fact determined the credibility of witnesses, and clearly believed appellee's witnesses over those presented by appellant, the jury did not clearly lose its way when it found appellant guilty of rape beyond a reasonable doubt. Thompkins, supra.
Appellant's sixth assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Vukovich, J., concurs.
Waite, J., concurs.
APPROVED:
 ______________________________ EDWARD A. COX, PRESIDING JUDGE